# Mayberry & Co. v. Morris.

62  113
96  193

## *Garnishment.*

1. *Commercial paper ; effect of transfer of.*—The transfer of negotiable paper, passing the legal title, made in good faith, and before maturity, founded on a valuable consideration, and without notice, creates in the transferree an original and paramount right of action against the makers, cutting off all legal and equitable defenses to which it may have been subject while it remained the property of the person to whom it was first delivered, and its negotiability is not affected, because it is payable to the order of the makers, and by them endorsed in blank.

2. *Same; what sufficient consideration for transfer of.*—The transfer of a negotiable paper, in payment of a pre-existing debt, is according to the known and usual course of business, and is founded on a valuable consideration, entitling the transferree to protection against equities and defenses to which the paper may have been subject between the original parties.

3. *Garnishment; when title of transferree of negotiable paper sought to be subjected, superior to lien of.*—Where the debt sought to be garnished is evidenced by negotiable paper, payable to the order of the makers, and by them endorsed in blank, which, at the time of the service of the garnishment, is in the hands of the judgment debtor, a transfer of such paper by the judgment debtor after the service of the writ to a third party, if made upon a valuable consideration, and without notice, before the maturity of the paper, clothes the transferree with a title superior to any right of the plaintiffs acquired by the issuance of the writ; the doctrine of *lis pendens* has no application to such a case.

APPEAL from Henry Circuit Court.

Tried before Hon. HENRY D. CLAYTON.

The appellants, B. Mayberry & Co., at the Spring term, 1876, recovered a judgment against one Wechsler, and, on this judgment, they sued out a writ of garnishment, which was served on the garnishee on the 21st of March, 1876, who answered admitting an indebtedness, evidenced by certain bills of exchange, made payable to their order, and by them endorsed in blank, and delivered to Wechsler. The preponderance of the testimony tended to show that these bills of exchange were in the possession of Wechsler at the time of the service of the garnishment, and remained in his hands until June or July, 1876, when he sent one of them to one

Cohen, a resident of New York, in payment of a pre-existing debt, who gave him credit for the full amount. Wechsler did not endorse the bill of exchange, but left it endorsed in blank as received by him. Afterwards, and before the maturity of the bill of exchange, Cohen transferred and endorsed the same to the claimant, Levi Morris. Morris interposed his claim under the statute, and upon the trial of this claim, judgment was rendered in his favor.

On the trial, the plaintiff requested the following written charges : "1. That if the jury believe, from the evidence, that the writ of garnishment was served on the garnishees on the 21st day of March, 1876, and that the note was not transferred by Wechsler to Cohen until June or July, 1876, then they must find for the plaintiff, and find the note subject to their claim. 2. That if the writ of garnishment was served before the transfer of the note by the defendant to Cohen, and by Cohen to the claimant, then the doctrine of *lis pendens* applies, and the jury must return a verdict for the plaintiff. 3. If the jury believe, from the evidence, that the note in dispute was transferred to Cohen, and by Cohen to claimant after the service of the garnishment upon the makers of said note, and the consideration of said transfer was a credit upon a pre-existing indebtedness of defendant Wechsler, to said Cohen, and he to Morris, they must find for the plaintiff. 4. That if the jury believe the evidence they must find for the plaintiff." The court refused to give each one of these charges, and the plaintiff separately excepted, and assigns the same as error.

WILLIAM C. OATES, for appellant.—The statute law of Alabama confers on plaintiffs, giving bond and making affidavit, the right to seize, by process of garnishment, *any debts* due the defendant which are or may be recoverable by him in an action of debt or *indebitatus assumpsit.*—22 Ala. 760 ; 29 Ala. 330. And the service of the garnishment gives the plaintiff a lien, from the time of service, upon the debt owing by the garnishee to the defendant.—Code, § 3280 ; 38 Ala. 527. The fact that the note was not due at the time of service of the writ of garnishment, did not exempt it from the garnishment in favor of the plaintiffs, so long as it remained the property of the defendant.—12 Ala. 96. The lien thus acquired cannot be defeated by a subsequent *bona fide* transfer by the defendant to a third person, though such person is entirely ignorant of the process and its service. The power of the defendant to convey any title to the note was taken away by the service of garnishment, and the claimant is

[Mayberry & Co. v. Morris.]

therefore without any title to the note.—6 Ala. 712; 11 Ala. 151; 6 Oregon, 254.

HENRY R. SHORTER, *contra.*—The paper was commercial, passed by endorsement, and a transfer of it for a valuable consideration, before maturity, constitutes the purchaser a *bona fide* holder, protected against all equities of which he had no notice. If the note had remained in Wechsler's hands, there can be no doubt that it would be subject to the garnishment; but he was in possession of negotiable paper, and the title to it was in him, and the possession and title to negotiable paper are one and inseparable. If he had the title and possession, his transfer vested the transferree with a good title, free from equities, of which he had no notice. There was nothing to put Cohen on inquiry; the note was endorsed by the payee in blank, and such endorsement authorizes any holder to fill up the blank with his own name. The consideration paid was a good and valuable one, and Morris acquired a title which is valid in all respects. The universality of the commercial law gives dignity, character, and value, and indemnity to parties holding commercial paper as innocent *bona fide* purchasers for value, &c., and the doctrine of *lis pendens* has no application to it. Even an injunction against the negotiation of commercial paper does not impair the title of a *bona fide* holder acquired during its pendency.—22 Ala. 760.

BRICKELL, C. J.—The note sought to be subjected by the garnishment, is under the statute negotiable, and governed by the commercial law.—Code of 1876, § 2094. A transfer of it passing the legal title, made in good faith, before maturity, founded on a valuable consideration, and without notice, creates in the transferree an original and paramount right of action against the makers, cutting off all legal and equitable defenses to which it may have been subject, while it remained the property of the judgment debtor, to whom it was in the first instance delivered. Its negotiable quality, from which results this peculiar incident, is not affected, because it is payable to the order of the makers, and by them endorsed in blank. The blank endorsement, any holder has the right to fill, by writing over it a direction to pay himself, or any other person. The liability of the makers and endorsers, is not thereby in any manner changed or enlarged. The endorsement and delivery of the note passes to the holder an unqualified power of disposition, and the authority to fill the endorsement, so that the person having the legal title may be designated.—2 Pars. Notes & Bills, 19;

*Pickett v. Stewart,* 13 Ala. 302; *Riggs v. Andrews,* 8 Ala. 628; *Sawyer v. Patterson,* 11 Ala. 523.

The transfer of negotiable paper in payment of a pre-existing debt, is according to the known and usual course of business, and is founded on a valuable consideration, entitling the transferree to protection against equities and defenses, to which the paper may have been subject between the original parties.— *Swift v. Tyson,* 16 Peters, 1; *Bank of Mobile v. Hall,* 6 Ala. 639; *Barney v. Earles,* 13 Ala. 106.

The claimant Morris, having taken the note before its maturity, in payment of a pre-existing debt, without notice of any equities or defenses existing between the makers and Wechsler, to whom the note was originally delivered, the inquiry is, what effect upon the negotiability of the note had the garnishment sued out by the appellants, and served before Wechsler transferred, or Morris acquired it. The statutes authorizing the process of garnishment, are very general in terms; when founded on a judgment, or issued in aid of a pending suit, the words are, that it may be directed " against any person supposed to be indebted to the defendant."—Code of 1876, §§ 3218–19. When the suit is by attachment, the writ may be executed " by summoning any person indebted to, or having in his possession, or under his control, property belonging to the defendant."—Code of 1876, § 3268. A lien upon the money or effects in the possession of the garnishee, from the service of the garnishment, is declared.—Code of 1876, § 3280. The lien cannot be defeated or impaired by a subsequent *bona fide* transfer, made in ignorance of the process, or its service.— *Dore v. Dawson,* 6 Ala. 712. It is, however, inchoate, imperfect, not conferring property, or a right of property, and dependent on the rendition of judgment against the garnishee.

General as are the terms of the statutes, they have not been regarded and construed as embracing every demand which may be esteemed as a *debt.* It is only when there is a sum of money due by an agreement expressed or implied, capable of recovery in an action of assumpsit or debt, that a garnishment will reach it.—1 Brick. Dig. §§ 313–314–320. The goods of a debtor may have been tortiously taken and converted, under circumstances which give him the right to recover them back, or to recover damages of the tortfeasor, or to waive the tort, and in an action for money had and received, to recover of him the money into which he may have converted them, the law implying the promise to pay it. This demand, though in an enlarged sense a *debt,* and though if the election is made to pursue an appropriate remedy, the

relation of tortfeasor is changed into that of a debtor, is not subject to garnishment.—*Lewis v. DuBose*, 29 Ala. 214.

The words of the statutes are, as is insisted by the counsel for appellants, broad enough to include a debt due by bill of exchange, or negotiable promissory note, equally with a debt due by a bill single, or a promissory note not negotiable. And if this paper were of the latter character; if it was not negotiable; if the law of its own policy did not favor and encourage, and facilitate its circulation, assuring the title of all who take it before maturity, upon a valuable consideration, and without notice of facts which should impair its value or negotiability; there could be no doubt that the service of the garnishment created a lien upon it which no subsequent transfer could defeat.

Whether negotiable paper because of its peculiar qualities, must not be excepted from the general words of the statutes, whether these qualities do not relieve it from all liability to garnishment, is not the question. It may be, as was said in *Mills v. Stewart*, 12 Ala. 96, that if it is not endorsed before maturity, and so long as the payee remains the proprietor of it, or if endorsed after its maturity, until the maker has notice of the transfer, it is subject to garnishment by the creditors of the payee. The case before us is that of a transfer of the paper before its maturity to a *bona fide* holder, of which the maker had notice, and the holder intervening in the garnishment suit, asserting his title as superior to the lien of the garnishing creditor, though the garnishment was served before the transfer to him.

Notwithstanding the service of the garnishment, possession of the note remained with Wechsler, the judgment debtor; and the possession of negotiable paper endorsed in blank, carries with it the title to the holder. "The possession and title are one and inseparable."—*Murray v. Lardner*, 2 Wall. 121. Possession may have been obtained, or may be retained wrongfully, still it is the evidence of the title upon the faith of which all persons dealing in good faith and for value, can acquire an indefeasible title. While it is a general rule, that all persons dealing with property which is the subject of a pending suit, can acquire from any of the parties or privies, only a title which is subject to be defeated by the judgment or decree therein rendered, the principle has not been extended to negotiable paper.— *Winston v. Westfeldt*, 22 Ala. 760 ; *County of Warren v. Marcy*, 97 U. S. 105. The safety of commercial transactions—and it is this the law-merchant intends to promote—has, as was suggested by Chancellor Kent, in *Murray v. Lilburn*, 2 Johns. Ch. 441, imposed this limitation on the principle of *lis pendens.* It may

[Mayberry & Co. v. Morris.]

be admitted, that the appellants acquired a *lien* on the note by the service of the garnishment; but it was a frail, uncertain lien. It was of no greater dignity, or operation, than the right they would have acquired, if Wechsler had by an instrument, separate and distinct from the note, (of which the note afforded no evidence,) transferred it to them. Such a transfer would have created at best but an equity, and it would have prevailed, if in bad faith Wechsler had controverted it. But Wechsler retained possession of the note, and that possession afforded to the world such evidence of right, that all having no notice of an adverse claim could, and were invited to deal with him. In all controversies with the makers, the right and title of the *bona fide* holder must prevail, whatever may be the latent equities, or legal defenses, of which the paper affords no evidence. No other principle can be recognized, unless negotiable paper is shorn of all the qualities which give to it a peculiar value, and invite transactions upon its faith. When the garnishment was sued out, the appellants must have known the character of the indebtedness of the garnishees, or if they did not then know it, the answer furnished them conclusive evidence of it. We say conclusive evidence, because the truth of the answer was not controverted. The appellants then stood, and the effect of the garnishment was, to substitute them to the place of Wechsler, save so far as there had been fraudulent transactions between him and the garnishees. Subsequent frauds of Wechsler, in which the garnishees do not participate, cannot subject them to liability to appellants. A judgment cannot, and ought not to be rendered against a garnishee, unless it will shield him from any demand of the judgment debtor, or those claiming under him. The judgment cannot protect him against a right and title which is independent of, and paramount to that of the judgment debtor—a right and title which the law enables the debtor to confer in pursuance of a well defined public policy, in opposition to its own maxims, in reference to any and all other species of property. The very nature, import, and legal obligation of negotiable paper, is not to pay a particular person but to pay whoever may be its *bona fide* holder at maturity, and to pay him absolutely and at all events. In its structure and form, and the character of its obligation, it is essentially distinguishable from a promise to pay a particular person, a particular sum, which is so hemmed and circumscribed, that it cannot pass without putting in inquiry all who touch and deal with it. The principle is, therefore, well settled, that if a garnishment will reach negotiable paper, before the rendition of judgment against the garnishees, it

[Martin v. The State.]

must be affirmatively shown that the note had become due, and was still the property of the payee, or of the holder, as whose property the garnishment is intended to condemn it. Drake on Att. §§ 582–92. No other principle will afford protection to the garnishees, and preserve the title of the *bona fide* holder. It may be, as is argued, that thereby the attachment, or the judgment debtor can, by transferring the paper, perpetrate a fraud on the law and on his creditors. But it is against his frauds, the law intends to protect the *bona fide* holder; and the latter has a good title, though the possessor transferring acquired possession by fraud or by theft. The negotiable quality of such paper, that which gives it a greater value than any other chose in action, would be in a great measure destroyed, if any other doctrine was maintained. There is no greater reason for protecting the attaching creditor against the frauds of the debtor, than for protecting the true owner against the fraud of his bailee or agent to whom he may have entrusted the paper; or, against a disposition made by one obtaining the paper feloniously. The claims are all subordinate to the paramount policy of the law, which encourages and facilitates the circulation of such paper, and invites the negotiation upon the faith of its possession.

The Circuit Court, in its rulings to which exceptions were reserved, conformed to these views, and the judgment must be affirmed.